**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION**

| | | |
|---|---|---|
| **ADAM R. WHITE and** | ) | |
| **JAMES NEWELL WHITE III,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **CASE NO.**_____ |
| **GRANT MASON HOLDINGS, INC., a** | ) | |
| **Delaware corporation;** | ) | |
| **Serve at:** | ) | |
| **Harvard Business Services, Inc.,** | ) | |
| **Registered Agent** | ) | |
| **16192 Coastal Hwy** | ) | |
| **Lewes, DE 19958** | ) | |
| **GRANT MASON L.L.C., an** | ) | |
| **Iowa limited liability company;** | ) | |
| **Serve at:** | ) | |
| **Donald F. Neiman, Registered** | ) | |
| **Agent** | ) | |
| **801 Grand Ave** | ) | |
| **Suite 3700** | ) | |
| **Des Moines, IA 50309** | ) | |
| **MIDWEST MAIL HOUSE, LLC, a** | ) | |
| **Missouri limited liability company;** | ) | |
| **Serve at:** | ) | |
| **Jason Shaffer, Registered Agent** | ) | |
| **1021 E Walnut** | ) | |
| **Springfield, MO  65806** | ) | |
| **MEDIA SOLUTIONS TEAM LLC, a** | ) | |
| **Missouri limited liability company;** | ) | |
| **Serve at:** | ) | |
| **Chris Crone, Registered Agent** | ) | |
| **510 S. Cavelier** | ) | |
| **Springfield, MO  65802** | ) | |
| **RANDAL PIKE, an individual;** | ) | |
| **Serve at:** | ) | |
| **655 Jalea St.** | ) | |
| **Hartford, IA 50118-8777** | ) | |
| **JESSICA PIKE, an individual** | ) | |
| **Serve at:** | ) | |
| **655 Jalea St.** | ) | |
| **Hartford, IA 50118-8777** | ) | |
| **GRANT MAYFIELD, an individual;** | ) | |
| **Serve at:** | ) | |

```
        1776 West Lakes Parkway          )
        West Des Moines, IA 50266         )
DARRYL MAYFIELD, an individual; &         )
        Serve at:                        )
        1776 West Lakes Parkway          )
        West Des Moines, IA 50266         )
PAUL FREEMAN, an individual               )
        Serve at:                        )
        6277 S. Weatherwood Trail         )
        Springfield, MO 65810             )
HUNG NGUYEN, an individual                )
        Serve at:                        )
        1776 West Lakes Parkway          )
        West Des Moines, IA 50266         )
                                          )
        Defendants.                       )
```

## VERIFIED COMPLAINT

**COMES NOW** Plaintiffs Adam White and James Newell White III ("Newell White") by and through their undersigned counsel and hereby sue Defendants Grant Mason Holdings, Inc., Grant Mason LLC, Midwest Mail House, LLC, Media Solutions Team, LLC, Grant Mayfield, Darryl Mayfield, Randal Pike, Jessica Pike, Hung Nguyen, and Paul Freeman and for their cause of action state as follows:

1.      Mr. Adam White is a natural person residing in Hillsborough County, FL.

2.      Mr. Newell White is a natural person residing in Hillsborough County, FL.

3.      Grant Mason Holdings, Inc., (hereinafter "Grant Mason") is a Delaware corporation, which has been doing business in Hillsborough County, FL.

4.      Grant Mason LLC, (hereinafter "Grant Mason") is an Iowa corporation, which has been doing business in Hillsborough County, FL.

5.      Defendant Midwest Mail House, LLC (hereinafter "Midwest Mail House") is a Missouri limited liability company residing in and doing business in Greene County, Missouri, and in active concert with Grant Mason Holdings, Inc.

6.      Defendant Media Solutions Team, LLC (hereinafter "Media Solutions Team") is a Missouri limited liability company residing in and doing business in Greene County, Missouri, and in active concert with Grant Mason Holdings, Inc.

7.      Defendant Grant Mayfield is an individual, upon information and belief residing in Iowa, and doing business in Hillsborough County, FL.

8.      Defendant Randal Pike is an individual, upon information and belief residing in Iowa, and doing business in Hillsborough County, FL.

9.      Defendant Darryl Mayfield is an individual, upon information and belief residing in Iowa, and doing business in Hillsborough County, FL.

10.     Defendant Paul Freeman is an individual, upon information and belief residing in Greene County, Missouri, and in active concert with Grant Mason Holdings, Inc.

11.     Jurisdiction and Venue are appropriate in that the intentional conduct giving rise to the Petition occurred in Hillsborough County Florida, and Plaintiff's damages occurred in Florida.

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1367, and 18 U.S.C. §1964.

13.     On or about June 2003, Plaintiffs formed Ideagear, LLC., a Florida limited liability company, to own and operate a print shop in Brandon, Florida and later relocated to Tampa Florida and marketed through various web sites.

14.     Plaintiffs, through Ideagear, LLC, continuously owned and operated the print shop from December 2003 until June 10, 2014 when Plaintiff's stock in Ideagear, LLC was sold to Defendant Grant Mason Holdings Inc., a Delaware corporation and Grant Mason LLC, an Iowa corporation.

15.     On or about March 3, 2014, Randal Pike contacted Plaintiff and in regards to an advertisement the Plaintiffs had posted on BizBuySell.com listing Ideagear, LLC for sale. And on March 4, 2014 both parties signed an NDA to move forward in those discussions.

16.     Randal Pike, represented that Defendant Grant Mason was an Iowa company with a large book of business and an under-capacity to handle the business, looking to buy print shops.

17.     On March 3, 2014, Newell White flew to Des Moines, Iowa to meet with the Grant Mason team including Darryl Mayfield, Randal Pike, Grant Mayfield and Hung Nguyen (NIC). This was a full day of meetings and discussions regarding the future of IdeaGear LLC.

18.     Randal Pike and Darryl Mayfield made claims that they had a book of business of about Twenty Million Dollars and expected to grow to Thirty plus Million Dollars within the next 12 months.

19.     Hung Nguyen made numerous representations regarding the business opportunities of Grant Mason and affirmed that Grant Mason was closing on numerous print company purchases and had the capability of funding a purchase of IdeaGear LLC.

20.     Darryl Mayfield stated that he had allotted $2-3 million dollars to this deal and was able to pay the asking price of One Million Eight Hundred Thousand Dollars in cash if needed.

21.     Darryl Mayfield stated that he was a print equipment dealer and had contracted to buy 2, KBA printing presses at Eight Million Dollars, for delivery to his facility in Springfield, MO.

22.     Darryl Mayfield also stated that he was financing the purchase and would profit approximately Two Million Dollars on the deal, which was one source of the money to purchase Ideagear, LLC.

23.     Darryl Mayfield also stated multiple times that he also was approved for an SBA loan and, if need be, he could cover the purchase that way as well.

24.     On March 21, 2014 Randal Pike presented Plaintiffs with a purchase agreement provided, if agreed to, would have transferred all shares of Ideagear LLC upon closing with no monies paid to Adam White and Newell White until 90 days post closing.

25.     Plaintiffs declined such terms, and in addition, expressed concern about lack of independently verifiable information on Grant Mason Holdings, Inc. and Grant Mason LLC.

26.     Darryl Mayfield then instructed Randal Pike via email to have no further contact with Adam White and Newell White, and to move forward with the acquisition of other print companies.

27.     In April, 2014 Randal Pike called Newell White stating that the board of directors agreed that they still needed Ideagear, LLC. At this point, negotiations on purchase of Ideagear LLC were handled by Randal Pike.

28.     On May, 2014, Randal Pike submitted a Letter of Intent (LOI) to purchase Ideagear, LLC.

29.     During negotiations, Randal Pike heavily lobbied for seller financing as opposed to a lump sum payment stating that the board of directors would approve the sale more quickly.

30.     On May 24, 2014 after much negotiating both Parties signed the LOI and on May 29-30, Randal Pike and Grant Mayfield visited the Ideagear offices in Hillsborough County, Florida, and met all personnel.

31.     In Hillsborough County, Florida, Randal Pike repeated the claims that Grant Mason had sufficient monies to complete the deal and about Grant Mason's book of business.

32.     During the May 29 meeting, Grant Mayfield and Randal Pike represented that Grant Mason was a Section 8(a) certified minority contractor with numerous government contracts and political election mailing business.

33.     Darryl Mayfield and Randal Pike further represented that they had a large customer database and needed certain web site technologies that Ideagear, LLC could provide.

34.     In addition, they represented that they had secured government contract and Randal Pike discussed the need for private label stores with Adam White for the Armed Forces and their recruiting campaigns.

35.     Defendants offered to purchase all of Plaintiff's membership interests in Ideagear, LLC, assume all of the debt and obligations of Ideagear, LLC, make all required monthly payments on behalf of Ideagear, LLC, pay all of the obligations of Ideagear, LLC in full and/or assume debts listed in Sales agreement.

36.     Prior to signing, Randal Pike provided the contract information to Plaintiffs for Paul Freeman of Mid-West Mail House as a reference.

37.     Paul Freeman stated to Plaintiffs that Grant Mason and its owners were a quality operation and had honored all parts of his sale contract including timely payments and that his former employees continued to have stable employment.

38.     Paul Freeman did not disclose that he was an owner and officer of Grant Mason Holdings INC. or the many defaults of which he was aware regarding other similar purchases.

39.     This reference was critical in the Plaintiffs' decision to agree to the sale.

40.     On June 10, the final sale documents and Promissory Notes were signed.

41.     Defendants made the above-identified representations to Plaintiffs to induce Plaintiffs to sell all stock in Ideagear, LLC.

42.     Unbeknownst to Plaintiffs, the representations were false.

6

43.     Unbeknownst to Plaintiffs, Defendants never intended to fulfill any of the obligations to Plaintiffs.

44.     Plaintiffs reasonably relied on the representations in agreeing to sell shares of Ideagear, LLC and entering into the Stock Purchase Agreement attached hereto as **Exhibit A** and the Employment Agreement attached hereto as **Exhibit B**.

45.     Shortly after the agreements were signed, Defendants moved the accounts receivable and the accounts payable for Ideagear, LLC to Des Moines, IA.

46.     Defendants corresponded through the US Mail, telephone, and email with Ideagear, LLC suppliers to obtain supplies and materials on credit.

47.     Indeed, unbeknownst to Plaintiffs, Defendants' *modus operandi* is, through fraud and trickery, to take all of the assets of printing companies, not fulfill any of the promises made, and leave the sellers and financiers holding all of the liabilities.

48.     Defendant, Paul Freeman agreed to help accomplish the scheme of the other Defendants.

49.     Defendants did not fulfill any of the obligations to Plaintiffs.

50.     After Defendants failed to make first Promissory Note payment, Plaintiffs repeatedly inquired about the payments, and Defendants repeatedly advised that they would be made soon.

51.     To date, Defendants never made any Promissory Note payments.

52.     Plaintiffs repeatedly inquired about health insurance benefits and employment contract status.

53.     On July 23, 2014, Plaintiff Adam White received health insurance coverage and documentation effective August 1, 2014. On the same day, health care coverage was utilized and subsequently determined to be canceled by Defendants.

54.     Plaintiff Newell White never received health insurance coverage.

55.     On multiple occasions, Defendant Randal Pike continually assured Plaintiffs that their health insurance premiums had been paid directly to the insurer.

56.     Unbeknownst to Plaintiffs, Defendants failed to make any payments towards health insurance premium.

57.     As a direct and proximate result of Defendants' failure to pay health insurance premiums, Plaintiffs' health insurance coverage was canceled by insurer.

58.     Plaintiffs became aware that Defendants had obtained new loans under the Ideagear, LLC name with First Global and Snap Advance.

59.     Upon information and belief, the individual Defendants personally took the borrowed funds, leaving the company crippled.

60.     The Snap Advance loan was a factoring loan, which required 14% of daily credit card sales to be directly withdrawn by Snap Advance to make loan payments.  These repayment terms effectively exceeded all daily profits from sales for Ideagear, LLC and left Ideagear, LLC unable to fulfill its customer obligations.

61.     Plaintiffs repeatedly inquired about the failure to make payments for Debts including but not limited to: Plaintiffs' loans, health insurance, vendors, USPS, Bank and Credit Card Loans.

62.     Defendants repeatedly advised Plaintiffs that everything was being taken care of.

63.     In August, 2014, Plaintiffs received notice that Defendants were in default of the obligations to First Global, Snap Advance, Regions Bank, American Express Ricoh, GE Capital and all Vendors.

64.     In August, 2014, counsel for Plaintiffs sent written correspondence to Defendants outlining the breach of contract by Defendants.

65.     Shortly thereafter, in August 2014, Defendants Darryl Mayfield, Randal Pike and Paul Freeman requested a conference call with Plaintiffs to discuss the letter.

66.     Defendants failed to cure the defaults outlined in the correspondence.

67.     Regions Bank holds a first priority security interest in all assets of Ideagear, LLC, and the Regions Bank loan is also personally guaranteed by Plaintiffs and further secured by other assets of Plaintiffs.

68.     Throughout July, August, September, 2014, Pike advised Plaintiffs that Defendants would be paying off the all debts as required by the Purchase Agreement.

69.     Plaintiffs have been forced to make payments to Regions Bank on the personal guarantees because Defendants have defaulted on the loan payments.

70.     On October 15, 2014, Plaintiffs received notice that Defendants were in default of their obligations to remit sales tax to the FL Department of Revenue.

71.     Plaintiffs subsequently became aware that Defendants had also defaulted on the obligations to rent, utilities, loans and vendors.

72.     Defendants continued to remove money from the operations account, misleading Plaintiffs about the uses of such money, bouncing checks and misrepresenting that rent, utilities, and other obligations were paid.

73.     On September 11, 2014, Defendants withdrew $10,000 from Ideagear, LLC bank account, which had been earmarked for employee payroll.  As a direct and proximate result of Defendant's action, the payroll company reversed payments made to employees.

74.     Plaintiffs also became aware that Defendants had defaulted on the obligations to pay utilities.

75.     Plaintiffs also became aware that Defendants had defaulted on the obligations to pay rent to the landlord of the Ideagear, LLC facility.

76.     Defendants have ceased all operations out of the Ideagear, LLC facility.

77.     Defendants subsequently changed locks at building and proceeded to remove all physical assets of Ideagear, LLC from the building.

78.     Plaintiffs have received numerous client calls with clients upset that they have not received their work.

79.     Plaintiffs have borrowed $80,000 to mitigate losses to customers and fill prepaid orders.

80.     Defendants have formed a new entity, Media Solutions Team, LLC, and are, upon information and belief, servicing Ideagear, LLC clients from the Media Solutions Team facility.

81.     Upon information and belief, Defendants transferred the assets of Ideagear, LLC to Media Solutions Team LLC.

82.     Upon information and belief, Defendants are not following corporate formalities, are taking company funds for personal use, and co-mingling and transferring assets between multiple companies to avoid responsibility for their obligations.

83.     Defendant Darryl Mayfield has repeatedly has made verbal and written threats using phone and text messaging to Plaintiff Newell White.

## COUNT I – FRAUDULENT MISREPRESENTATION

84.     Plaintiffs hereby restate, re-allege and incorporate the above paragraphs as if fully set forth herein.

85.     Fraud occurs when a party makes a material misrepresentation with knowledge of its falsity (or recklessly without any knowledge of the truth) and as a positive assertion; the misrepresentation is made with the intention that it should be acted on by the other party; and the other party acts in reliance on the misrepresentation and thereby suffers injury.

86.     A misrepresentation is a false statement of fact, a promise of future performance made with intent not to perform as promised, or a failure to disclose when there was a duty to disclose.

87.     Defendants' actions constitute false or reckless statements of fact and failures to disclose in light of a duty to disclose.

88.     As set forth above in detail, Defendants made the misrepresentations to induce Plaintiffs to sell their interests in Ideagear, LLC.

89.     The representations were false, and the Defendants knew the representations were false.

90.     The representations were crucial to Plaintiffs' decision to sell their membership interests in Ideagear.

91.     Plaintiffs were unaware that the representations were false at the time that they entered into the transaction.

92.     Plaintiffs relied on the representations as being true when they entered into the transaction.

93.     Plaintiffs were entitled to rely on the representations of Defendants.

94.     Plaintiffs have been injured by their reliance on the representations in that they entered into the transaction without receiving anything in return.

95.     Plaintiffs are entitled to rescind purchase agreement.

96.     Given the damages and obligations Defendants have incurred in the name of Ideagear, Plaintiffs cannot be made whole by undoing the stock transfer.

97.     Accordingly, Plaintiffs are entitled to an order conveying all of the assets of Ideagear to Plaintiffs or their designee free and clear of all liens and encumbrances which accrued subsequent to the transfer and for further damages and for further damages.

**WHEREFORE** Plaintiffs pray that this Court enter judgment in their favor and enter an order conveying the assets of Ideagear to Plaintiffs free and clear of all liens and encumbrances which accrued after the transfer.  Plaintiffs also pray for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also prays for his reasonable attorneys fees and costs incurred herein, for statutory treble damages, and for such other and further relief as this Court deems just and proper under the circumstances.

<u>**COUNT II – RICO – 18 U.S.C. § 1962**</u>

98.     Plaintiffs hereby restate, re-allege and incorporate the above paragraphs as if fully set forth herein.

99.     Defendants have violated the civil provisions of the RICO statute as described more fully below.

100.     Under 18 U.S.C. § 1964 (c):

Any person injured in his business or property by reason of a violation of Section 1962 of this chapter may sue therefor . . . and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

101.     Under 18 U.S.C. § 1962(b):

It shall be unlawful for any person through a patter of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

102.     The RICO statute defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in a property."

103.     Each of the Defendants is a "person" as defined by the statute.

104.     The RICO statute defines the term "enterprise" to include "any individual, partnership, corporate, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

105.     The association of Defendants constitutes an "enterprise" as the term is defined in the RICO statute.

106.     Section 1961(1) of RICO defines "racketeering activity" to include any of the enumerated predicate acts listed in § 1961(1).  Included in the list of predicate acts are mail fraud and wire fraud.

107.     Under 18 U.S.C. § 1341, mail fraud is defined as:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposts or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom any such matter or thing, or knowingly caused to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing . . .

108.     Under 18 U.S.C. § 1343, wire fraud is defined as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such a scheme or artifice . . .

109.     Under 18 U.S.C. § 1344, bank fraud is defined as follows:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice to defraud a financial institution or to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of a financial institution by means of false or fraudulent pretenses, representations, or promises . . .

110.     Defendants formed an enterprise and engaged in activity to steal the income and assets of print shops in multiple states by making misrepresentations and promises to the Sellers and financiers and then leaving the sellers and financiers with all of the debt and obligations.

13

111.    Upon information and belief, each of the individual Defendants knowingly joined the conspiracy and engaged in activity to further the conspiracy.

112.    Defendants, jointly and severally, have colluded and engaged in fraudulent and illegal acts set forth above, which took place in interstate commerce and which constituted acts of wire fraud, mail fraud, and bank fraud.

113.    Defendants' fraudulent conduct and pattern and practice of fraud has been repeated with multiple print shops.  For example, the Petition attached as **Exhibit C** was filed by a Missouri Plaintiff.

114.    On at least one instance where Defendants were not able to convince a company to sell, Defendants used the identity of the target company to obtain equipment and supplies on credit in the name of the target company and without the knowledge, authority or consent of the target company.

115.    The activities of the enterprise of Defendants herein constitute a pattern of racketeering activity in that the activities were both continuous and related: the false acts were all intended to induce many people to sell their printing income, customers, and assets or to finance the acquisition of such income, customers, and assets under false pretenses.  Defendants, by and through their fraud and false misrepresentations, induced many persons to sell their assets or provide financing to them.

116.    Defendants received income, assets, and benefits from the enterprise.

117.    Defendants used the income, assets, reputation and benefits of the companies acquired to further their scheme and spread the fraud to acquire other companies in a similar manner.

**WHEREFORE** Plaintiffs pray for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also pray for their reasonable attorneys fees and costs incurred

herein, for statutory treble damages, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT III – UNJUST ENRICHMENT

118.    Plaintiffs hereby restate, re-allege and incorporate the above paragraphs as if fully set forth herein.

119.    Defendants have received the income, customer contacts, and assets of Ideagear without providing any compensation to Plaintiffs.

120.    Defendants have further used Ideagear and its income and assets to further their *modus operandi* and enter into similar transactions with other persons and companies.

121.    Plaintiffs have provided time, services, confidential information and proprietary know-how to Defendants with no compensation.

122.    Defendants, jointly and severally, have retained the benefit of the work, time, effort, and confidential and proprietary information of Plaintiffs and of the assets of Ideagear.

123.    Defendants' acceptance and retention of these benefits is unjust because Defendants have not compensated Plaintiffs for them.

124.    Allowing Defendants to retain the amount the benefits would inequitable.

125.    Defendants have unjustly acquired and retained Plaintiff's shares in Ideagear.

126.    Allowing Defendants to retain Plaintiff's shares without compensation would be inequitable.

**WHEREFORE** Plaintiffs pray that this Court enter judgment in their favor and against Defendants, jointly and severally, disgorge Defendants of their unjust enrichment, and enter an order conveying all assets of Ideagear to Plaintiffs free and clear of all liens and encumbrances which accrued subsequent to the transfer and to award Plaintiffs damages in an amount to be

proven at trial, for costs incurred herein and for such other and further relief this Court deems just and proper under the circumstances.

## COUNT IV – BREACH OF CONTRACT – EMPLOYMENT AGREEMENT

127.     Plaintiffs hereby restate, re-allege and incorporate the above paragraphs as if fully set forth herein.

128.     As set forth above Defendants have breached the Exhibit B employment agreements by failing to pay Plaintiffs.

129.     Plaintiffs have provided time, services, know-how, availability, and confidential information to Defendants.

130.     Plaintiffs have been damaged by Defendants' breaches set forth herein.

**WHEREFORE** Plaintiffs pray that this Court will enter a judgment in their favor and against Defendants, jointly and severally, award monetary damages in an amount to be proven at trial, award them costs incurred herein, award them interest at the statutory rate on the unpaid balance, and for such other further relief as this Court deems just and proper under the circumstances.

## COUNT V – BREACH OF CONTRACT – PA / NOTE

131.     Plaintiffs hereby restate, re-allege and incorporate the above paragraphs as if fully set forth herein.

132.     As set forth above Defendants have breached the Exhibit A purchase agreement and promissory notes by failing to pay Plaintiffs and by failing to pay for the liabilities of Ideagear, LLC, as agreed.

133.     Plaintiffs fulfilled all of their obligations under the Agreements.

134.     Plaintiffs have been damaged by Defendants' breaches set forth herein.

**WHEREFORE** Plaintiffs pray that this Court will enter a judgment in their favor and against Defendants, jointly and severally, award monetary damages in an amount to be proven at trial, award them costs incurred herein, award them interest at the statutory rate on the unpaid balance, and for such other further relief as this Court deems just and proper under the circumstances.

### COUNT VI – CONVERSION

135.    Plaintiffs hereby restate, re-allege and incorporate the above paragraphs as if fully set forth herein.

136.    Defendants were not entitled to the assets, income and benefits they took from Ideagear.

137.    Defendants exercised dominion and control over those assets, income and benefits.

138.    Upon information and belief, Defendants converted the assets, income and benefits to their own use.

139.    Defendants are not entitled to Plaintiffs' shares in Ideagear.

140.    Defendants obtained Plaintiffs shares by false pretenses and trickery.

141.    Defendants have failed and refused to return the assets of Ideagear to Plaintiffs or provide payment for them.

142.    Defendants have failed and refused to return the funds taken from Ideagear or provide an accounting for the funds.

143.    Defendants' conduct as set forth above amounts to a fraudulent scheme designed to secure Plaintiffs' stock, income, and assets of Ideagear by means of trickery and deliberate falsehood.

144.    Defendants' conduct as set forth above has caused damages to Plaintiffs.

**WHEREFORE** Plaintiffs pray for a judgment in their favor and against Defendants for damages in amounts to be proven at trial, for punitive damages, for costs of this action, and for all other relief this Court deems just and proper.

## COUNT VII – RESCISION

145.   Plaintiffs hereby restate, re-allege and incorporate the above paragraphs as if fully set forth herein.

146.   As set forth above, Defendants obtained the stock of Ideagear, income of Ideagear, and assets of Ideagear by false pretenses and trickery.  Accordingly, Plaintiffs are entitled to rescind the purchase agreement.

147.   Given the damages and obligations Defendants have incurred in the name of Ideagear, Plaintiffs cannot be made whole by simply undoing the stock transfer.

148.   Accordingly, Plaintiffs are entitled to an order conveying all of the assets of Ideagear to Plaintiffs or their designee free and clear of all liens and encumbrances which accrued subsequent to June 10, 2014 and to an award of damages.

**WHEREFORE** Plaintiffs pray that this Court enter judgment in their favor and enter an order conveying the assets of Ideagear to Plaintiffs free and clear of all liens and encumbrances which accrued after June 10, 2014.  In the alternative, Plaintiffs pray for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also pray for their reasonable attorneys fees and costs incurred herein, for punitive damages, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT VIII – JUDICIAL LIQUIDATION OF IDEAGEAR

149.   Plaintiffs hereby restate, re-allege and incorporate the above paragraphs as if fully set forth herein.

150.    Plaintiffs, hereby petition this Court to appoint a receiver for the judicial liquidation of Ideagear.

151.    As set forth above, Defendants are taking advantage of Plaintiffs, and are, through IDEAGEAR, conducting business in a fraudulent and illegal manner in that liabilities to the State of Florida are not being paid, sales and income of the company are not being reported, all contrary to the public policy of the state of Florida.

152.    Accordingly, Plaintiffs are entitled to have this Court appoint a receiver to take control of IDEAGEAR and all of its assets, to judicially dissolve IDEAGEAR and appropriately distribute its assets.

**WHEREFORE** Plaintiffs respectfully pray that this Court enter judgment establishing a receiver to take immediate control of the assets of IDEAGEAR, dissolving IDEAGEAR, and appropriately distributing its assets.

## COUNT IX – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA)

153.    Plaintiffs hereby restate, re-allege and incorporate the above paragraphs as if fully set forth herein.

154.    Defendants' actions, as detailed above, are unfair and deceptive trade practices in violation of FDUTPA, Florida Statute § 501.201, *et seq*.

155.    Plaintiffs have been damaged by Defendants' violations, as detailed above.

156.    Accordingly, Plaintiffs are entitled to a declaratory judgment that Defendants' conduct violates the Florida Deceptive and Unfair Trade Practices Act.

157.    Plaintiffs are also entitled to rescind the transfer agreement and recover damages, punitive damages, attorneys' fees and court costs.

**WHEREFORE** Plaintiffs pray that this Court enter judgment in their favor and enter an order conveying the assets of Ideagear to Plaintiffs free and clear of all liens and encumbrances which accrued after June 10, 2014.  In the alternative, Plaintiffs pray for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also pray for their reasonable attorneys fees and costs incurred herein, for punitive damages, and for such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted this 25th day of November, 2014.

**CLAPP BUSINESS LAW, LLC**

By: /s/ Mary M. Clapp
Mary M. Clapp, #62703
mary@clappbusinesslaw.com
2518 S. Campbell Ave.
Springfield, MO  65807
(417) 894-2920
(417) 890-1635 (facsimile)
Attorney for Plaintiffs

VERIFICATION

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

      Come now, James Newell White III and Adam White, jointly and state that they are the

Plaintiffs named above, and the information stated herein is true and correct according to their

best information, knowledge and belief.

_____
James Newell White III

_____
Adam R. White

      Subscribed and sworn before me, under penalty of perjury, this _22nd_ day of November,

2014 by the persons known to me as James Newell White III and Adam White, acting

individually.

_____
Notary Public

JULIE ANNE SWAIN
MY COMMISSION # FF 100153
EXPIRES: April 11, 2016
Bonded Thru Notary Public Underwriters

21